UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § § § | |
| *Plaintiff*, | § § | |
| *v*. | § § | Civil Action No.  SA-16-CV-173-XR |
| THE GEO GROUP, INC., and JUAN AGUILAR, | § § § § | |
| *Defendants*. | § § § | |

# ORDER

On this date, the Court considered Plaintiff John Doe's Oral Motion for Reconsideration of his Motion for Leave to Amend (dated January 24, 2017) and his Motion for Leave to Amend (Docket no. 58).[1] After careful consideration, the motions are DENIED.

# BACKGROUND

Plaintiff John Doe filed suit against Defendants the GEO Group, Inc. and Juan Aguilar on February 23, 2015, in the 81st District Court in Frio County, Texas. Docket no. 1-1 at 1. On February 18, 2016, GEO removed to this Court on the basis of diversity. Docket no. 1. Doe filed a motion to remand, which was denied on May 24, 2016. Docket nos. 5, 12.

Doe alleges that while he was incarcerated at GEO's South Texas Detention Complex, Aguilar sexually assaulted him. Docket no. 1-1 at 7. Aguilar was an employee of GEO at the time. *Id*. Doe contends that GEO was aware of Aguilar's "dangerous sexual tendencies," had been warned about his "extremely dangerous propensities," and had the ability to foresee Aguilar's assault on Doe. *Id*. at 8. The Original Petition includes causes of action for sexual

---

[1] Doe made the oral motion at a recent hearing on other pending motions. After taking the oral motion under advisement, the parties submitted briefing, and Doe submitted the written request, which is mostly consistent with his positions at the hearing.

assault and conspiracy against both defendants, and asserts premises liability, negligence, and gross negligence claims against GEO only. *Id*. at 8–9.

On November 1, Doe filed a motion for leave to file his First Amended Complaint. Docket no. 34. The proposed amended complaint adds factual allegations detailing the sexual assault and includes new sections alleging that GEO is vicariously liability for the actions of Aguilar. Docket no. 34-1 at 2–3, 8–9. It also seeks to add causes of action against both defendants for intentional infliction of bodily injury, sexual assault, and intentional infliction of emotional distress. *Id*. at 3–6.

Notably for purposes of this order, Doe's proposed amended complaint includes a reference to the *negligence* of Aguilar in addition to that of GEO. *Id*. at 6. That cause of action appears under the heading "Negligence and Gross Negligence" and reads "Plaintiff's injuries and damages were proximately caused by Defendant the Geo Group, Inc.'s and Aguilar's negligent, careless and reckless disregard of duty which consisted of, but is not limited to, the following acts and omissions: (a) Failing to provide a safe environment for detainees such as Plaintiff." *Id*. This claim lists nine other types of conduct, but all others apply only to GEO. *Id*. The proposed amended complaint's allegations related to respondeat superior and vicarious liability do not mention Aguilar's negligence. *Id*.

On November 7, 2016, the Court denied Doe's motion for leave to amend and granted in part GEO's motion to dismiss. Docket no 35. At this point, the case was proceeding against GEO solely on the basis of Doe's negligent hiring, supervision, and training theories.

On January 24, 2017, the Court held a hearing on four unrelated motions.[2] For the first time, Doe's counsel suggested that the Court erred in denying leave to amend and dismissing all claims against GEO except those based on a direct theory of negligence. Doe's argument

---

[2] Three were *Daubert* motions; the fourth was a motion to compel a deposition.

centered on his proposed respondeat superior theories. First, he suggested that GEO could be held vicariously liable for the intentional tort that Aguilar committed against Doe. Second, he suggested that GEO could be held vicariously liable for Aguilar's negligence, and that Aguilar himself committed the assault negligently; in other words, the assault was both negligent and intentional.

After taking Doe's oral motion under advisement, the Court conducted additional research, and later invited the parties to submit briefing on the issue of whether vicarious liability could be imputed to GEO on the basis of Aguilar's alleged negligence. Doe, Aguilar, and GEO all briefed the issue. Docket nos. 57, 58, 59.

On March 1, 2017, Doe filed a Response and Supplemental Brief in Support of his Motion for Leave to File an Amended Complaint. Docket no. 60. He did not seek leave to file this response. In the interests of completeness, however, the Court will consider the response.

## DISCUSSION

### I. Standard of Review

Because more than 21 days have passed since GEO and Aguilar have filed their answers, Doe must seek leave of court to amend his complaint. FED. R. CIV. P. 15(a). Although leave to amend pleadings "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), leave to amend is not automatic. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The decision to grant or deny a motion to amend is within the sound discretion of a trial court. *Id.* In exercising its discretion, the court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)

3

(citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if it fails to state a claim upon which relief could be granted such that it would be subject to dismissal. *Stripling v. Jordan Production Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

## II. Analysis

Because Doe's proposed vicarious liability theories related to Aguilar's sexual assault do not state a claim upon which relief can be granted, amendment would be futile. For this reason, Doe's motions are denied.

### a. GEO cannot be held vicariously liable for Aguilar's intentional assault.

"Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment. This is true even though the employee's tort is intentional when the act, although not specifically authorized by the employer, is closely connected with the servant's authorized duties. *If the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be liable.*" *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999) (emphasis added).

Texas courts have extended vicarious liability to employers based on intentional torts of employees of who are authorized to use force in their line of work, such as nightclub bouncers. *E.g., G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 883 (Tex. App.—Dallas 2003, no pet.). In *Gonzalez*, a night club patron was intentionally beaten by several bouncers, and asserted that the club owner was liable for this intentional tort under a respondeat superior theory. *Id* at 884–85. The court recognized that the bouncers were employed based on their size and were authorized to break up fights (sometimes using chokeholds to do so) and remove patrons from the club, even though this specific use of force was against the club owner's policies. *Id*. The appellate court affirmed a finding that the club owner was vicariously liable. *Id*.

*Gonzalez* is illustrative of a typical situation in which an employee–tortfeasor is in a line of work that necessarily implicates the authorized use of force (such as a club bouncer); in these cases, employers may be vicariously liable for intentional torts that are a derivative of that authorization. Defendant Aguilar, as a prison employee, may be authorized to use force in certain situations. This idea, however, cannot explain how a sexual assault would be committed "in the accomplishment of a duty entrusted to the employee."

In *Buck v. Blum*, a doctor was performing a neurological examination that usually involved a patient holding a metal weight in a his or her hand; instead of using the weight, the doctor placed his penis in a patient's hand. *Buck*, 130 S.W.3d 285, 289–90. The patient sued, attempting to impose vicarious liability on the doctor's employer, but the court granted summary judgment against this respondeat superior theory:

> While it is undisputed [that the doctor's] alleged action was inappropriate, it cannot be fathomed that the action was in furtherance of the employer's business or for the accomplishment of an object for which he was employed. At the very moment [the doctor] placed his body part in her hand (assuming he did), he was acting in his own prurient interest and ceased to be acting for the employer. The neurological examination at that point was only a pretense or a means for [the doctor's] inappropriate personal gratification. Nor can it be said the assault was so connected with and immediately arising out of [the doctor's] employment tasks as to merge the activities into one indivisible tort. A club bouncer has an inherently confrontational job that may well require physical force; whereas, neurology is not an inherently sexual profession and never requires the action allegedly perpetrated by [the doctor].

*Id*.

The present case is analogous to *Buck*, which accurately lays out the distinction from *Gonzalez*. Even if Aguilar is authorized to use force against GEO detainees, the specific use of force in this case was motivated by Aguilar's personal gratification rather than the accomplishment of duties for his employer. As in *Buck*, corrections is not an inherently sexual

5

profession, and never requires the actions taken by Aguilar.[3] Accordingly, GEO cannot be held liable for Aguilar's intentional torts, and leave to amend was properly denied on this theory.

### b. GEO cannot be held vicariously liable for Aguilar's negligence.

In Texas, to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a legal duty of reasonable care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The existence of a legal duty is a question of law for the court to decide based on the facts of each case. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). A determination regarding whether a duty exists requires that court to consider a number of factors, including the risk, foreseeability, and likelihood of injury to the person harmed, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the risk of injury, and the consequences of placing that burden on the actor. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Other important factors for a court to consider include whether one party has superior knowledge of the risk of harm, and whether there exists a right to control the actor whose conduct precipitated the harm. *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993).

At the January 24 hearing, Doe made more of this second theory than of the first. Doe argued that Aguilar's assault was not only an intentional act and tort, but also a negligent act that resulted in the breach of a duty that Aguilar owed to Doe. His argument, in the abstract, is that Aguilar had a duty to act as a reasonable and prudent corrections officer would in similar circumstances, and that Aguilar breached this duty. The admitted end-game of this argument is

---

[3] Doe's Supplemental Briefing argues that *Buck* is distinct because the plaintiff there was allowed discovery on the course and scope of the doctor's employment. Docket no. 60 at 1–2. This argument overlooks the underlying issue with a theory that attempts to hold a prison liable for a sexual assault committed by one of its employees—there is no explanation as to how the employee's sexual assault is committed "in the accomplishment of a duty entrusted to the employee" or how corrections is an "inherently sexual profession."

that it provides a path for imposing vicarious liability on GEO for the *negligent* act of Aguilar, its employee. Doe's counsel clarified that this theory is separate from his allegations of GEO's direct negligence under the negligent hiring, training, and supervision theories.

Doe's argument is based exclusively on *Wackenhut Corrections Corporation v. de la Ros*a, 305 S.W.3d 594, 605 (Tex. App.—Corpus Christi 2009, no pet.), *abrogated by Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015). Consistent with his oral motion at the hearing, Doe's written briefing reads:

> The Court should allow the filing of Plaintiff's amended pleading because the amendment is not futile. *See Foman v. Davis*. Texas law specifically allows a principal to be held vicariously liable for the intentional and negligent torts of its employees (agents) acting in the course and scope of their employment. *Wackenhut Corr. Corp. v. de la Rosa* (holding Wackenhut Corr. Corp. (now The Geo Group, Inc.) vicariously liable for the negligence of its employee jailors) . . . Similarly, in this case, The Geo Group, Inc. can be held vicariously liable for the negligent acts and omission of its jailors, including those intentional and negligent acts of Defendant Aguilar, while in the course and scope of his employment. An amended pleading adding a vicarious liability claim against The Geo Group, Inc. for the intentional and negligent acts of its employees including those of Defendant Juan Aguilar is not futile and should be allowed by this Honorable Court

Docket no. 58 at 3–4. Doe, whose counsel was lead counsel for the plaintiff in *Wackenhutt*, attached the *Wackenhut* complaint, jury charge, final judgment, and appellate court opinion to his motion. *See* Docket no. 58 at 4.

In *Wackenhut*, an inmate at a private correctional facility was beaten to death with a lock tied to a sock after guards failed to properly search the assailants for weapons. *Wackenhut*, 305 S.W.3d at 601–05. The guards stood by and laughed as the fatal attack occurred. *Id*. The inmate's estate and family members sued the facility and its warden, ultimately winning a favorable jury verdict that was later affirmed in large part by the appellate court. *Id*. at 661. There is no indication that individual prison guards were named as defendants. *See generally id.*

One of the many issues on appeal was the jury charge on the negligence claims against the warden. *Id*. at 618. The charge allowed for recovery based on two theories: (1) the warden's failing to exercise reasonable care in "under[taking] to perform services [he] knew or should have known were necessary for the protection of [the deceased inmate]," and (2) and failing to exercise reasonable care "to control [the assailants]" despite the fact that the warden "knew or should have known [the assailants] were likely to cause bodily harm to others if not controlled." *Id*. at 609. The defendants challenged the charge, arguing that a duty cannot be imposed on a prison operator in such situations absent knowledge that an injury will be inflicted or good reason to anticipate that danger. *Id*. at 609–10. The appellate court affirmed, but the reasoning had nothing to do with the underlying legal duty or the instruction itself; the decision was based entirely on the defendants' procedural mistake in failing to preserve error at trial. *Id*. at 615–19.

*Wackenhut*, at most, stands for the proposition that a Texas court might reasonably impose a duty *on a prison warden* even without specialized knowledge of an impending injury. *Id*.; *see also Delaney v. GEO Group, Inc.*, SA-12-CV-541-XR, 2012 WL 3526789, at *4 (W.D. Tex. Aug. 14, 2012).[4] This possibility, however, is irrelevant—Doe seeks to impose a duty of care on a prison employee (Aguilar) when *Wackenhut* might impose this duty only on a prison warden, if at all. Indeed, the individual guards who failed to conduct a proper weapons search or

---

[4] In *Delaney*, the estate of an inmate who committed suicide in a private correctional facility sued the facility and its warden in Texas state court, including claims of negligence against the warden. *Delaney*, 2012 WL 3526789 at *1. The defendants removed on the basis of diversity, arguing that even though the warden was not of diverse citizenship, he was improperly joined. *Id*. This Court granted the plaintiff's motion to remand, recognizing that under *Wackenhut*, the plaintiff *might* have a negligence claim against the warden:

> [B]oth parties are correct in their characterization of *Wackenhut*'s significance. Defendants are correct that the case does not conclusively establish that [the warden] had a duty to [the deceased inmate]. However, it nevertheless provides some reason to believe that such a duty *might reasonably be imposed on him* by Texas courts. . . . [T]his Court therefore determines that Defendants have not met their burden of demonstrating that Plaintiffs might be able to recover against [the warden].

*Id*. at *4 (emphasis added).

intervene to protect the decedent in *Wackenhut* were not defendants in that case, and the appellate opinion addresses only the duty of care that might exist for a prison warden.

Aside from *Wackenhut*, however, Texas law might impose a duty of care on prison staff such as Aguilar. *See Salazar v. Collins*, 255 S.W.3d 191, 203 (Tex. App.—Waco 2008, no pet.). In *Salazar*, an inmate at a Texas Department of Criminal Justice (TDCJ) facility sued TDCJ after he was assaulted with a weapon by another inmate. *Id*. at 194. The court of appeals discussed at length whether a prison and its employees owed a duty of care in this situation. *Id*. at 198–203. Ultimately, the court concluded that "TDCJ and its officials and employees who exercise supervisory authority in its prisons have a 'special relationship' with TDCJ inmates and thus owe a duty of reasonable care to protect inmates from harm when that harm is reasonably foreseeable." *Id*. at 203. The appellate court reversed the trial court's grant of summary judgement on the inmate's negligence claims against TDCJ because "genuine issues of material fact remain on the question of whether [the attacker] presented 'an unreasonable and foreseeable risk of harm to [the plaintiff].'" *Id*.

Giving Doe the benefit of the doubt and assuming that a Texas court would extend *Salazar* to Aguilar, it is difficult to apply this standard to Doe's intentional-but-negligent theory in this case. According to *Salazar*, both a prison facility and its employees have a duty to prevent harm that is "reasonably foreseeable." From *Aguilar's* perspective, his sexual assault would be reasonably foreseeable because it was intentional; thus, if Doe were permitted to proceed on this theory, Aguilar might be negligent, and GEO might be vicariously liable. Yet this argument overlooks that the *Salazar* duty applies also to the prison facility, which should only be held liable in negligence if the harm facing Doe (Aguilar's sexual assault) is reasonably foreseeable *to GEO*. The Court does not see how the *Salazar* duty could be so self-contradictory.

In a broader sense, the Court has found no cases (and Doe cites none) that allow an intentional tort, such as sexual assault, to be re-characterized as an act of negligence, thus opening the door for a different legal standard for vicarious liability. Further, the Court cannot imagine how this would be the state of Texas law. Allowing intentional torts to be re-cast as negligent ones would destroy the legal distinction that Texas law draws for imposing vicarious liability for intentional versus negligent acts. If the law allowed Doe's theory, there would be no reason why Texas law has these different standards. *Compare Gonzalez*, 106 S.W.3d at 883 (describing heightened standard for vicarious liability in intentional tort cases) *with Wilson v. Davis*, 305 S.W.3d 57, 66 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (describing lower standard for vicarious liability in negligence cases).

In addition, as GEO and Aguilar point out in their briefing, Texas courts in other contexts are well aware of the distinction between negligent and intentional torts, and have been unwilling to allow intentional torts to be re-cast as negligent ones to invoke different legal standards. In *Texas Department of Public Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001), the Texas Supreme Court found that the Texas DPS did not waive sovereign immunity under the Texas Tort Claims Act where the plaintiff alleged that an officer negligently committed various intentional acts because "these are intentional rather than negligent acts, and thus do not fall within the waiver of sovereign immunity." Similarly, in *National Union Fire Insurance Company v. Bourn*, 441 S.W.2d 592, 592–93 (Tex. Civ. App.—Fort Worth 1969, writ ref'd n.r.e.), four individuals intentionally attacked the plaintiff, who filed suit under theories of intentional assault and negligent "fail[ure] to restrain each other from attacking plaintiff." After obtaining a favorable jury verdict on both theories, the plaintiff sued insurance companies that provided homeowners' policies to several of the defendants. *Id.* at 594–95. The policies excluded coverage for "bodily

10

injury or property damage caused intentionally by or at the direction of the Insured" *Id*. at 596. The court found that the exclusions applied, despite the jury's negligence finding, because "[t]he negligence issues should not have been submitted. The whole record proves a concerted, intentional act upon plaintiff." *Id*.

Accordingly, Doe's amendment would be futile, and his motions for leave should be denied.

### c. Doe presents no other arguments that justify granting leave to amend.

In his Supplemental Briefing, Doe makes two additional arguments in support of his request for leave to amend. First, he suggests that leave should be granted to allow him to assert claims on the basis of other GEO employees' conduct through yet another respondeat superior theory. *See* Docket no. 60 at 2. His proposed amended complaint, however, does not seek to add additional defendants. See *generally* Docket no. 34-1.

Second, Doe argues that leave should be granted so he can assert a theory of negligence based on GEO's non-delegable duty "to provide a safe environment free from sexual assaults by its employees." Docket no. 60 at 3. This theory, however, is a theory of *direct* negligence against GEO, and does not rely on principles of vicarious liability or respondeat superior through which GEO would be liable for the acts of its agents. The Court already denied GEO's motion to dismiss on a similar theory of direct negligence. *See* Docket no. 35 at 4 ("GEO's motion to dismiss is denied with respect to Doe's negligence claims against GEO arising from GEO's negligent hiring, supervision, and failure to warn of Aguilar's known dangerous propensities."). Accordingly, leave to amend is not warranted.

## CONCLUSION

For the foregoing reasons, Doe's Oral Oral Motion for Leave to Amend (dated January 24, 2017) and his Motion for Leave to Amend (Docket no. 58) are DENIED. The only remaining causes of action in this case are Doe's claim against Aguilar for assault, and Doe's claims against GEO for negligent hiring, training, and supervision.

It is so ORDERED.

SIGNED this 2nd day of March, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE